IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RICHARD L. BABER, JR., | ) | |
| | ) | Civil Action No. 7:21cv00101 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MARK NEELY, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Richard L. Baber, Jr., a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that the defendants harassed, threatened, used excessive force, and retaliated against him, denied him access to courts, failed to investigate his allegations against other defendants, and assaulted him, all while he was housed at Middle River Regional Jail ("Middle River"). All of the defendants except Investigator Sgt. Shifflet[1] filed a motion for summary judgment arguing that Baber failed to exhaust available administrative remedies before filing this action. After reviewing the evidence, the court agrees and will grant the defendants' motion.

I.

Baber claims that on January 6, 2021, he requested copies of legal paperwork from defendant Mark Neeley. Neeley took Baber's papers to be copied, but Baber did not believe Neeley would get the copies back in time for him to meet his court deadline. Baber expressed

---

[1] The United States Marshals Service unsuccessfully attempted to locate defendant Shifflet. (*See* ECF No. 16.) Therefore, service has not been accomplished on him. The court will give Baber the opportunity to provide a valid address for Shifflet; if he cannot, Shifflet will be dismissed from this action without prejudice.

his concerns to another jail officer who relayed those concerns to Neeley. Baber alleges that Neeley became angry at Baber for questioning his ability to do his job, and allegedly screamed at Baber, "cussed [Baber] like a dog," threatened to "beat [Baber's] ass," and slammed the door to Baber's housing unit on Baber's foot. (ECF No. 1, at 14.) Baber claims that Neeley acted out of retaliation after Baber filed a grievance against Neeley for "cross contamination."[2] (*Id.* at 15.)

The next day, Baber talked to defendants Sgt. Caplinger and Lt. Maddox about the incident on January 6. Baber claims that Caplinger and Maddox "interrogated" him and tried to dissuade him from filing charges or a lawsuit against Neeley. (*Id.* at 6.) Baber alleges that Caplinger and Maddox threatened to charge him with an institutional infraction for displaying his middle finger to Neeley during the incident on January 6. Baber claims that defendant Investigator Sgt. Shifflet entered the room, but did nothing to stop the interrogation. He also claims that Caplinger and Maddox conspired with Shifflett to intimidate him. He argues that their actions were "a Deprivation of [his] Civil Rights to Due Process, rudeness, intimidation, insulting, Deprivation of Rights, Deliberate indifference, excessive force, retaliation, threat of corporal punishment, cruel and unusual punishment, libel, legally negligent emotional distress." (*Id.* at 7.)

Finally, Baber alleges that on January 16, 2021, defendant Cpl. Brookman refused to provide Baber with § 1983 forms. Baber states that he was told by another inmate that § 1983

---

[2] It is unclear what this means, but it is irrelevant to the court's adjudication of the defendants' motion for summary judgment.

-2-

forms were available at the jail upon request, and that he verbally requested § 1983 forms from Brookman, but Brookman refused to provide him with the forms. Baber claims that after Brookman's refusal, he submitted requests through the jail's inmate request system.

As relief, Baber seeks $500,000 from each defendant, $2 million from Middle River, and requests that all of the defendants lose their jobs and are "never [] able to work in any law enforcement field again." (*Id.* at 1.)

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to

defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

## III.

The defendants argue that Baber failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The court agrees and will grant their motion for summary judgment.

## A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not

provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

**B.**

In support of the defendants' motion for summary judgment, Grievance Coordinator K. Jolly provided an affidavit, Middle River Regional Jail's Inmate Handbook ("Handbook"), and Baber's grievance records related to the claims raised in this action. The Handbook establishes a three-step grievance process at Middle River. First, inmates with grievances about "jail policies, procedures, and/or treatment" must "attempt to resolve [their] concern with an officer or staff member prior to submitting a grievance." (*See* Handbook, Inmate Grievance Procedure [ECF No. 18-1, at 11].) Second, if the issue is not resolved through informal means,

the inmate can "request a Grievance Form," which prison officials must respond to within nine working days. (*Id.*) Grievances must be submitted "within 30 days of the incident/issue which is the basis for [the] grievance." (*Id.*) Third, if an inmate "disagree[s] with the response" to the grievance, the inmate "may appeal using a Grievance Appeal Form," but must appeal within "2 days after receipt of the grievance response." (*Id.* at 12.) Middle River's grievance procedure conforms with 6 Va. Admin. Code § 15-40-130. (Jolly Decl. ¶ 8 [ECF No. 18-1, at 2].)

## C.

When Baber was booked into Middle River, he was oriented to and provided a copy of the Handbook, including instructions on how to access the grievance procedure. (*Id.*) After reviewing Baber's grievance file, Grievance Coordinator Jolly determined that he did not satisfy the grievance procedure regarding the allegations against Neeley, Lt. Maddox, Sgt. Caplinger, or Cpl. Brookman. (*Id.* ¶ 11.) Baber's deadline to submit a grievance for Neely's alleged actions was February 5, 2021—30 days after the alleged January 6 incident. (*Id.* at ¶ 12.) Baber's deadline to submit a grievance for Maddox or Caplinger's alleged actions was February 6, 2021—30 days after the alleged January 7 "interrogation." (*Id.*) Baber's deadline to submit a grievance for Bookman's alleged failure to provide § 1983 forms was February 15, 2021—30 days after the alleged January 16 conversation with between Baber and Brookman. (*Id.*)

On January 7, 2020, Baber submitted Grievance 47558 alleging that Neeley threatened him in retaliation for Baber filing a grievance on him for "cross contamination." (*See* ECF No.

18-1, at 25) Baber claimed that Neeley's alleged statement that he would "beat [Baber's] ass" was assault and battery. (*Id.*) Baber requested that Neeley be terminated from employment with Middle River.

On January 15, Baber received a response to Grievance 47558, stating that Maddox and Caplinger had discussed the incident with Baber and that Baber had been provided the legal copies he has asked Neely to make. Baber's request that Neeley be terminated from employment was not granted. Baber had until January 17 to appeal the grievance response, but he did not. Under the applicable procedures, Baber was required to appeal Grievance 47558 to exhaust his administrative remedies; he did not, and the time for doing so has passed. (Jolly Decl. ¶ 15.)

Baber did not submit any grievances complaining of the "interrogation" by Maddox and Caplinger, and the time for doing so has passed. (Jolly Decl. ¶ 16.) Baber also did not submit any grievances complaining of Brookman's refusal to give him a § 1983 form, and the time for doing so has passed. (Jolly Decl. ¶ 17.)

It is undisputed that Baber did not exhaust available administrative remedies as to his claims. Therefore, the court will consider whether administrative remedies were "available" to Baber.

In his unverified response to the defendants' motion for summary judgment, [3] Baber states that he "know[s] [that he] didn't follow proper protocol in the grievance procedure, but

---

[3] The court notes that Baber was given notice of the motion for summary judgment filed against him and the opportunity to file counter-affidavits or other evidence "contradicting, explaining, or avoiding" defendants' evidence. (*See* ECF No. 19.)

-7-

there is a reason why." (ECF No. 22, at 17.) Baber explains that he submitted a grievance the same day that Maddox and Caplinger interrogated him, and with "their reaction that day, [he] knew they would be involved in any step [he would] try to get help," so he waited to get Grievance 47558 back "to see what type of response [he]'d get because [he] sent it to administration." (*Id.*) Baber states that when he got it back, "sure enough it didn't make it anywhere." (*Id.*) Baber alleges that Maddox had "stopped it and responded to the grievance and shut [him] down and lied about getting the incident investigated." (*Id.*)

Baber also claims that he "took the bull by the horns" and contacted Investigator Lt. Todd Lloyd directly on January 15, 2021.[4] (*Id.*) Baber states that he "continued talking" to Lloyd until February 8, 2021, and that he also tried to get help from outside the jail from the Virginia State Police. (*Id.*) Baber alleges that he asked the floor officers for a grievance form and a grievance appeal form, but they "wouldn't get them for [him]." (*Id.* at 20.)

Thereafter, on February 17, 2021, Baber was transferred to Pamunkey Regional Jail ("Pamunkey"), where he claims that he was "blocked" from filing any grievances or appeals.[5]

Baber states that he "knows" that if he had filed a grievance against Maddox, Caplinger, or Brookman, it would have been "stopped by Lt. Maddox or Sgt. Caplinger." (*Id.* at 18.) Baber also claims that he "felt" that if he had filed a grievance against Maddox or Caplinger, they

---

[4] It is unclear from Baber's pleadings what agency Lt. Lloyd worked for, but the court assumes he is an investigator with the Virginia Department of Corrections.

[5] To the extent Baber is alleging that he was transferred in retaliation for filing grievances, the court notes that any such claim is not before the court in this action. Although inmates have no constitutional right to be housed any particular facility, *see Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) and *Meachum v. Fano*, 427 U.S. 215, 223-224 (1976), to the extent Baber could bring any cognizable § 1983 claim concerning these allegations, the court notes that this opinion does not prevent Baber from filing a separate civil action concerning those claims.

would "probably put [him] in seg[regation]." (*Id.*) Baber alleges that the grievance procedure at Middle River is an "absolute joke." (*Id.*) He claims that grievances are always "blocked" by the person an inmate is writing about and that the person to whom the grievance is written is not the person who responds to the grievance. (ECF No. 23, at 6.)

Even accepting these unsupported assertions and opinions as true, Barber has not shown that he was prevented from pursing administrative remedies "through no fault of his own." The Handbook provides, "If you cannot get what you need verbally through your Housing Officer, you may submit an inmate request through the tablet or a written request form. Request forms are available on each housing unit." If Baber's housing officer did not provide him with the requested forms, he could have requested them through the inmate request system, but he did not. (Jolly Supp. Decl ¶ 4 [ECF No. 27-1, at 2].) Even though Baber submitted over 30 inmate requests from the January 6 incident until the expiration of his grievance deadlines, he never submitted a written or tablet request asking for grievance forms or grievance appeal forms. (*Id.*)

To the extent Baber alleges that exhaustion would have been futile, he has not shown that he was prevented from pursing administrative remedies "through no fault of his own." "Exhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile." *Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *Akins v. United States*, No. 3:04-23200-MBS-JRM, 2006 U.S. Dist. LEXIS 24256, at *7 (D.S.C. Mar. 22, 2006),

("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement."), *aff'd*, 202 F. App'x 592 (4th Cir. 2006).

And to the extent Baber claims that his transfer to Pamunky prevented him from filing grievances, he has not shown that he was prevented from pursing administrative remedies "through no fault of his own." Transfers, without more, do not excuse the PLRA's exhaustion requirement or render exhaustion futile. *Kebede v. Butner FCI Prison Low Unit*, No. 5:20-CT-03330-M, 2021 U.S. Dist. LEXIS 249680, at *6 (E.D.N.C. Nov. 22, 2021). Further, Baber's transfer to Pamunkey did not prevent him from exhausting his remedies. According to Grievance Coordinator Jolly, Baber's deadline to submit a grievance for Maddox and Caplinger's alleged actions was February 6, 2021—11 days *before* to his transfer—and his deadline to submit a grievance for Brookman's alleged actions was February 15, 2021, two days *before* his transfer. (Jolly Supp. Decl. ¶ 8.) Baber's deadline to submit an appeal for the grievance he filed for the alleged actions of Neeley was January 17, 2021—one *month* before his transfer. Because all of Baber's filing deadlines expired before his transfer, his transfer to Pamunkey had no effect his ability to exhaust his administrative remedies.

Accordingly, the court cannot find that Baber was prevented from properly exhausting available administrative remedies "through no fault of his own." Finding no genuine dispute of material fact on this issue, the court concludes that Baber failed to exhaust available administrative remedies as to his claims raised in this action.

## IV.

For the reasons stated, the court will grant the defendants' motions for summary judgment. Accordingly, this action remains pending only as to defendant Sgt. Shifflet. Because the United States Marshals' Service was unable to locate Sgt. Shifflet (*see* ECF No. 16), in order to proceed with his claims against Sgt. Shifflet, Baber must provide the court with an address where Sgt. Shifflet can be served. Failure to provide an address will result in dismissal of the complaint without prejudice as to Sgt. Shifflet.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 4th day of February, 2022.

>*/s/ Thomas T. Cullen*
>HON. THOMAS T. CULLEN
>UNITED STATES DISTRICT JUDGE